IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Kenneth Jean Wash, | NO. C 04-04207 JW |
|         Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| D. L. Runnels, et al., | |
|         Respondents. | |

## I. INTRODUCTION

This matter is now before the Court for consideration of Kenneth Jean Wash's ("Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254[1] concerning his 2002 conviction in the Alameda County Superior Court. For the reasons set forth below, the Petition is DENIED as to all claims.

## II. BACKGROUND

**A.   Facts**

On December 31, 2001, two Union City, California police officers saw Petitioner run up to an 89-year old woman from behind while she was walking with her cane on her way to a shopping center.[2] Petitioner struck the woman, struggled with her, and then violently knocked the

---

[1] (Petition for Writ of Habeas Corpus, hereafter, "Petition," Docket Item No. 1.)

[2] The facts are recounted from the opinion of the California Court of Appeal. (Exhibits re Response to Habeas Petition, Opinion of the California Court of Appeal, Ex. 4, hereafter, "Appeal," Docket Item No. 26.)

1 woman to the ground and took her purse. (Id.)  The two officers chased Petitioner and saw
2 Petitioner jump into a white Toyota that was waiting with the passenger door open. (Id. at 1-2.)  As
3 the car was leaving, one of the officers took down the license plate number of the Toyota. (Id. at 2.)
4 A San Leandro police car spotted a car matching the broadcasted description of the white Toyota
5 and followed it. (Id.)  Then, after the San Leandro police officer turned on the overhead light, the
6 white Toyota slowed down and Petitioner jumped from the car and ran. (Id.)  The driver of the car,
7 Wayne Lee Carneigie, was arrested in the car and officers found Petitioner hiding in the bushes.
8 (Id.)

9 The victim was severely injured; she suffered from cuts, bruises, and a four-part fracture of
10 her left shoulder that required two surgeries, which included a prosthesis implant. (Appeal at 2.)
11 The victim was unable to perform many of her daily activities and was considering leaving her home
12 to live in an assisted living facility as a result of her injuries. (Id.)

13 On February 19, 2002, Petitioner was charged in an information with one count of robbery, a
14 serious felony under California Penal Code § 1192.7, subdivision (c), and inflicting great bodily
15 injury to a person 70 years of age or older under California Penal Code § 12022.7, subdivision (c).[3]
16 (Id. at 2.)  The information also alleged Petitioner had six prior felony convictions, two of which
17 were strikes. (Id.)

18 At trial, while Petitioner's co-defendant, Wayne Lee Carneigie, did not testify, Petitioner
19 testified that he had been using crack cocaine during the five days before the robbery and was
20 hearing voices telling him to get more cocaine. (Appeal at 2.)

---

[3] Petitioner was also charged with elder abuse under section 368, subdivision (b)(1), but the charge was dismissed by the prosecutor prior to trial. (Appeal at 2 n.2.)

2

On May 8, 2009, the jury found Petitioner guilty of the crimes alleged in the information.[4] On May 9, 2002, the jury found that Petitioner had three felony prior convictions:[5] the first prior conviction, an August 30, 1994 robbery, a violation of California Penal Code § 211;[6] the sixth prior conviction, an August 10, 1982 residential burglary, a violation of California Penal Code § 459;[7] and the third prior conviction, a December 16, 1998 grand theft person, a violation of California Penal Code § 487.2.[8] The first and sixth prior convictions were strikes.[9] (Appeal at 2.)

On August 16, 2002, the trial court denied Petitioner's motion to dismiss the prior convictions and sentenced Petitioner to forty-one years to life with the possibility of parole.[10] (2 CT at 290-91.)

---

[4] (Exhibits 1A-1B re Response to Habeas Petition, Clerk's Transcript on Appeal Vol. II at 195 Ex. 1B, hereafter, "2 CT," Docket Item No. 27.)

[5] The Prosecutor submitted three of the six prior convictions to the jury charged in the information. (Exhibits 2C re Response to Habeas Petition, Reporter's Transcript on Appeal Vol. III at 520, hereafter, "3 RT," Docket Item No. 30.)

[6] (Appeal at 3.)

[7] (Id.)

[8] (2 CT at 207.) Regarding the grand theft person conviction, the jury also found Petitioner "served a separate prison term therefore and that a period of less than five years elapsed in which the [Petitioner] remained free of both custody and the commission of an offense which resulted in the conviction of a felony." (Id.)

[9] As explained by the California Supreme Court, "[t]he Legislature and California voters have also enacted a 'parallel sentencing scheme' for repeat offenders. Under the 'Three Strikes' law, a defendant who is accused of a felony may also be charged with having previously been convicted of other crimes. If the previous convictions meet the statutory definitions of 'strikes' and are proven true, the defendant may be sentenced not to a determinate term, but to an indeterminate term of 15 or 25 years to life." People v. Anderson, No. S152695, 2009 Cal. LEXIS 7479, at *10 (Jul. 23, 2009). The statutory definitions of "strikes" may be found in Cal. Penal Code §§ 667, 1170.12.

[10] Petitioner received: 25 years to life for the robbery he was charged with pursuant to California Penal Code §§ 667(e)(2) and 1170.12 (c)(2), and pursuant to 12022.7(c) Petitioner received a consecutive sentence of 5 years; an additional 5 years for the first prior conviction, the 1994 robbery, pursuant to § 667(a)(1); an additional 5 years for the 1982 residential burglary, the sixth prior conviction, pursuant to § 667(a)(1); and an additional year for the 1998 grand theft, the third prior conviction, pursuant to § 667.5(b). (2 CT at 331.)

**B.      Case History**

On August 7, 2003, the First Appellate District of the California Court of Appeal affirmed the judgment of the Alameda County Superior Court. (Appeal at 1.) On October 15, 2005, the Supreme Court of California's denied Petitioner's petition for review. (Exhibits re Response to Habeas Petition, Order of California Supreme Court Denying Review, Ex. 6, Docket Item No. 26.)

On October 5, 2004, Petitioner filed a Petition for Writ of Habeas Corpus, Motion to Proceed *In Forma Pauperis*, and a Motion for Appointment of Counsel and for an Evidentiary Hearing in this Court.[11] On August 15, 2005, the Court issued an Order to Show Cause, granted leave to Proceed *In Forma Pauperis*, and denied Petitioner's Motion for Appointment of Counsel and for an Evidentiary Hearing. (Order to Show Cause, Docket Item No. 9.) On October 26, 2005, Respondents filed a Motion to Dismiss for Failure to Exhaust State Remedies. (Motion to Dismiss Habeas Corpus Petition for Failure to Exhaust State Remedies, Docket Item No. 13.) On November 28, 2005, Petitioner filed a Motion to Stay and Abeyance[12] and Opposition to Motion to Dismiss. (Motion for Stay; Petitioner's Opposition to Motion to Dismiss, Docket Item No. 17.) On January 4, 2006, the Court granted Petitioner's Motion for Stay and Abeyance until thirty days after the California Supreme Court's final decision as to Petitioner's unexhausted claims. (Order Granting Motion for Stay and Abeyance; Administratively Closing Case, Docket Item No. 18.)

On March 20, 2006, Petitioner filed a Petition for Writ of Habeas Corpus with the California Supreme Court. (Printout of Docket Showing California Supreme Court's Denial of Petition, Ex. 8, Docket No. 26.) On November 15, 2006, Petitioner's Petition for Writ of Habeas Corpus was

---

[11] (Petition for Writ of Habeas Corpus, hereafter, "Petition," Docket Item No. 1; Motion to Proceed *In Forma Pauperis*, Docket Item No. 3; Motion and Declaration to Appoint Counsel, Docket Item No. 4.)

[12] Petitioner acknowledged that three issues were not exhausted: (1) the trial court abused its discretion in failing to dismiss a prior strike conviction; (2) the trial court failed to properly instruct the jury; and (3) counsel rendered ineffective assistance. (Notice and Motion Stay and Abeyance at 2, Docket Item No. 16.)

4

denied. (Id.) On November 30, 2007, this Court lifted stay and reopened the case. (Order Reopening Case, Docket Item No. 21.)

### III. STANDARDS

Petitioner filed his Petition for Writ of Habeas Corpus in this Court on October 5, 2004. Accordingly, this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which imposes a "new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus." Williams v. Taylor, 529 U.S. 362, 412 (2000).

Under the AEDPA, a district court may entertain a petition for writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court proceedings unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412; Lockyer v. Andrade, 538 U.S. 63, 71 (2003); see Alvarado v. Hill, 252 F.3d 1066, 1068-69 (9th Cir. 2001). Section 2254(d)(1) "restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Williams, 529 U.S. at 412.

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, at 412-13. "Under the 'reasonable application' clause, a federal

1 habeas court may grant the writ if the state court identifies the correct governing legal principle from
2 [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's
3 case." Id.

4 "[A] federal habeas court may not issue the writ simply because the court concludes in its
5 independent judgment that the relevant state court decision applied clearly established federal law
6 erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, at 411.
7 The objectively unreasonable standard is not a clear error standard. See Andrade, 538 U.S. at 75
8 (rejecting the Ninth Circuit's use of clear error standard in Van Tran v. Lindsey, 212 F.3d 1143,
9 1152-54 (9th Cir. 2000)). Conflating the "objectively unreasonable" standard with the "clear error"
10 standard "fails to give proper deference to state courts." Id.

11 A federal habeas court may also grant the writ if it concludes that the state court's
12 adjudication of the claim "resulted in a decision that was based on an unreasonable determination of
13 the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).
14 An unreasonable determination of the facts occurs where the state court fails to consider and weigh
15 highly probative, relevant evidence, central to the petitioner's claim, that was properly presented and
16 made part of the state-court record. See Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004). A
17 district court must presume correct any determination of a factual issue made by a state court unless
18 the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. §
19 2254(e)(1). This presumption is not altered by the fact that the finding was made by a state court of
20 appeals, rather than by a state trial court. See Sumner v. Mata, 449 U.S. 539, 546-47 (1981); Bragg
21 v. Galaza, 242 F.3d 1082, 1087 (9th Cir. 2001), amended by 253 F.3d 1150 (9th Cir. 2001).

22 Finally, habeas relief is warranted only if the constitutional error at issue is a structural error
23 or had a "substantial and injurious effect or influence in determining the jury's verdict." Penry v.
24 Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).
25 Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but

6

they are not entitled to habeas relief based on trial error unless they can establish that it resulted in "actual" prejudice. Brecht, 507 U.S. at 637.

Where, as in this writ, the California Supreme Court denies review of Petitioner's claim without explanation, the Court looks to the last reasoned state court decision in conducting habeas review. See Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000) (citation omitted) (the district court "looks through" the unexplained California Supreme Court decision to the last reasoned state court decision), cert. denied, 534 U.S. 944 (2001). The California Court of Appeal rendered the last reasoned state court decision in Petitioner's case.

## IV. DISCUSSION

Petitioner alleges the following claims for federal habeas corpus relief: (1) Petitioner's due process right to notice was violated by the failure to expressly allege the specific Penal code section in the information; (2) the failure of the trial court to dismiss a prior strike conviction was an abuse of discretion; (3) the trial court's refusal to submit several factual issues surrounding Petitioner's prior convictions to the jury violated his Sixth and Fourteenth Amendment rights, and (4) ineffective-assistance of counsel. The Court considers each claim in turn.

**A.     Violation of Due Process based on a Deficient Information**

Petitioner contends that it was error to impose an additional ten years for serious prior felonies when the specific code section was not expressly alleged in the information, which prevented Petitioner from receiving proper notice, thus violating his right to due process. (Petition at 13.) Specifically, Petitioner contends that he was not put on notice of the potential five-year enhancements from the August 30, 1994 robbery and the August 10, 1982 residential burglary convictions that qualified as strikes[13] because the information did not specifically allege California Penal Code § 667(a). (Id.)

---

[13] Under sections 667, subdivision (e)(2)(A) and 1170.12, subdivision (c)(2)(A) of the California Penal Code.

7

The Sixth Amendment guarantees a criminal defendant a fundamental right to be clearly informed of the nature and the cause of the accusation against him. See Calderon v. Prunty, 59 F.3d 1005, 1009 (9th Cir. 1995); Nevius v. Sumner, 852 F.2d 463, 471 (9th Cir. 1988), cert. denied, 490 U.S. 1059 (1989). This guarantee applies to the states through the Due Process Clause of the Fourteenth Amendment. Gautt v. Lewis, 489 F.3d 993, 1003 (9th Cir. 2007) (citing Cole v. Arksansas, 333 U.S. 196, 201 (1948).

It is clearly established federal law that a criminal defendant has a Sixth Amendment right to be informed of any charges against him, and that a charging document, such as an information, is the means by which such notice is provided. Gautt, 489 F.3d at 1004 (citing Cole, 333 U.S. at 201). The Supreme Court "has never held that non-charging document sources can be used to satisfy the Constitution's notice requirement" where the defendant claims that he never received sufficient notice of the underlying charge. Id. at 1009 (defendant charged with a sentence enhancement under one subsection of a statute could not be sentenced under another subsection that had more requirements and carried a stiffer penalty). However, the habeas court can look to sources other than the information for evidence that the defendant did receive adequate notice of the theory of a case (e.g., felony murder) if he received the theory of a case . See id. at 1009.

To determine whether a defendant has received fair notice of the charges against him, the court looks first to the information. See James v. Borg, 24 F.3d 20, 24 (9th Cir.), cert. denied, 513 U.S. 935 (1994); Lincoln v. Sunn, 807 F.2d 805, 812 (9th Cir. 1987). The principal purpose of the information is to provide the defendant with a description of the charges against him in sufficient detail to enable him to prepare a defense. See James, 24 F.3d at 24; United States v. Lane, 765 F.2d 1376, 1380 (9th Cir. 1985). The Ninth Circuit applied a harmless error analysis to a right to notice case, declining to decide whether it was structural error. Gautt, 489 F.3d at 1015 (focusing not on the evidence presented as much as on defendant's detrimental reliance to conclude that the error was not harmless). The Ninth Circuit noted, however, that it was "inclined to believe" that a lack of

notice of the actual charge was structural error because it affected the framework within which the trial proceeds. Id. at 6801.

Here, the California Court of Appeal found as follows:

> [T]he information alleged a robbery conviction on August 30, 1994, and an August 10, 1982 residential burglary conviction, which qualified as a strikes under sections 667, subdivision (e)(2)(A) and 1170.12, subdivision (c)(2)(A). The information also alleged that the robbery prior conviction was a violent felony and that the current crime was violent felony within the provisions of section 667.5, subdivision (a).

(Appeal at 3.)

The Court of Appeal then considered whether Petitioner's conviction was defective on the ground Petitioner was given two five-year enhancements under California Penal Code § 667(a), while the information charging him did not specifically allege that specific Penal Code section. The court determined that any deficiency in the information was harmless error, because Petitioner was on notice of the potential for an enhanced sentence based on the "express statement of the prosecutor . . . and the notations in the probation reports . . . indicating the prosecutor's intent to seek the five-year enhancements." (Id. at 5.) The court then noted that the factual predicate for the five-year enhancement under section 667(a) was the same as that for the "three strike" enhancement that was alleged in the information. (Id.) Finally, the court concluded that Petitioner was not prejudiced because the "record does not indicate that [Petitioner] would have prepared [his] defense any differently if the precise code was pled in the information. Because the information alleged the prior convictions and their status as strikes, [Petitioner] had actual notice that the information exposed [him] to enhanced punishment. . . ." (Id. at 6.)

Upon review, the Court finds that the California Court of Appeal's rejection of this claim was neither contrary to, nor an unreasonable application of federal law. First, the Court of Appeal was reasonable in determining that Petitioner was on notice of the potential for a sentencing enhancement under section 667(a), given the prior convictions alleged in the information, the prosecutor's statements, and the probation report. Second, Petitioner presents no evidence that rebuts the inference that he had notice of the potential sentencing enhancement based on each of

9

1 these facts. Finally, Petitioner advances no relevant case law or statutory provision that would have
2 required the specific Penal Code section to have been alleged in the information.

3 Accordingly, Petitioner is not entitled to habeas relief on his claim that his due process right
4 to notice was violated by the failure to expressly allege the specific penal code section in the
5 information.

### B. The Trial Court's Failure to Dismiss a Prior Strike Conviction

Petitioner contends that failure of the trial court to dismiss a prior strike and its sentencing of Petitioner to forty-one years to life is cruel and unusual punishment. In particular, Petitioner contends his addiction to crack cocaine impaired his judgment.[14] In particular, Petitioner claims that his sentence was grossly disproportionate to the crime and an abuse of discretion, because the trial court has the discretion to strike a felony conviction pursuant to Cal. Civ. Code § 1385, subdivision (a), "in furtherance of justice," and justice was required here. (Traverse at 4.)

#### 1. General Standards

State sentencing courts must be accorded wide latitude in their decisions as to punishment. See Walker v. Endell, 850 F.2d 470, 476 (9th Cir. 1987), cert. denied, 488 U.S. 926, and cert. denied, 488 U.S. 981 (1988). Generally, therefore, a federal court may not review a state sentence that is within statutory limits. See id.[15] There are two types of Eighth Amendment challenges that a petitioner may raise to his criminal sentence. See Harris v. Wright, 93 F.3d 581, 583 (9th Cir. 1996). A petitioner may challenge his sentence as grossly disproportionate to the crime, or he may

---

[14] (Petitioner's Traverse to Respondent's Answer at 6, hereafter, "Traverse," Docket Item No. 32.)

[15] However, there are exceptions under the Due Process Clause and the Eighth Amendment. A sentencing scheme also may implicate a specific constitutional guarantee. See, e.g., Grisby v. Blodgett, 130 F.3d 365, 369-70 (9th Cir. 1997) (sentencing scheme that allows defendants who go to trial to receive sentence of death or life imprisonment without possibility of parole, while defendants who plead guilty can receive no more than life with possibility of parole, impermissibly penalizes defendants for exercising their Sixth Amendment right to jury trial).

10

1 claim that it is inconsistent with evolving standards of decency.[16] A prisoner also may claim the
2 punishment violates the Eighth Amendment if it is one of the modes or acts of punishment that was
3 considered cruel and unusual at the time the Bill of Rights was adopted. See United States v.
4 Gementera, 379 F.3d 596, 608 (9th Cir. 2004).

5      "Outside the context of capital punishment, successful challenges to the proportionality of
6 particular sentences will be exceedingly rare." Solem v. Helm, 463 U.S. 277, 289-90 (1983). For
7 the purposes of review under 28 U.S.C. § 2254(d)(1), it is clearly established that "[a] gross
8 proportionality principle is applicable to sentences for terms of years." Lockyer v. Andrade, 538
9 U.S. 63, 72 (2003); Gonzalez v. Duncan, 551 F.3d 875, 882 (9th Cir. 2008). But the precise
10 contours of the principle are unclear, and "applicable only in the 'exceedingly rare' and 'extreme'
11 cases." Lockyer, 538 U.S. at 73 (quoting Harmelin v. Michigan, 501 U.S. 957, 1001 (1991)).
12 "[T]he principle reserves a constitutional violation for only the extraordinary case." Id. at 76; see
13 Gonzalez, 551 F.3d at 882 ("The Supreme Court's Eighth Amendment jurisprudence establishes that
14 no penalty is *per se* constitutional, and that *successful* challenges to the proportionality of particular
15 sentences are exceedingly rare and reserved only for the extraordinary case.") (internal citation
16 omitted). Only extreme sentences that are grossly disproportionate to the crime violate the Eighth
17 Amendment. United States v. Carr, 56 F.3d 38, 39 (9th Cir. 1995).[17]

18      A challenge to the proportionality of a sentence should be analyzed using objective criteria,
19 which include: (1) the gravity of the offense and harshness of the penalty; (2) a comparison of
20 sentences imposed on other criminals in the same jurisdiction; and (3) a comparison of sentences
21 imposed for the same crime in other jurisdictions. Solem, 463 U.S. at 290-92.

---

[16] In Atkins v. Virginia, 536 U.S. 304, 304-11 (2002), the majority opinion analyzed proportionality as a subset of evolving standards of decency. See id. at 311-13.

[17] See, e.g., Ewing, 538 U.S. at 29-31 (upholding sentence of 25-year-to-life for recividist convicted most recently of grand theft); Andrade, 538 U.S. at 76 (upholding sentence of two consecutive terms of 25-years-to-life for recividist convicted most recently of two counts of petty theft with a prior conviction); Harmelin, 501 U.S. at 996 (upholding sentence of life without possibility of parole for first offense of possession of 672 grams of cocaine).

11

In determining whether the sentence is grossly disproportionate under a recidivist sentencing statute, the court looks to whether such an "extreme sentence is justified by the gravity of [an individual's] most recent offense and criminal history." Ramirez v. Castro, 365 F.3d 755, 768 (9th Cir. 2004). In considering the relevance of the recent offense and criminal history, a court must consider the "factual specifics" of an individual's priors to determine whether the conduct involved violence or was particularly serious. Reyes v. Brown, 399 F.3d 964, 970 (9th Cir. 2005). Under this proportionality principle, the threshold determination for the court is whether the petitioner's sentence is one of the rare cases in which a comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality. United States v. Bland, 961 F.2d 123, 129 (9th Cir. 1992) (quoting Harmelin, 501 U.S. at 1005), cert. denied, 506 U.S. 858 (1992). Only if such an inference arises does the court proceed to compare the petitioner's sentence with sentences in the same and other jurisdictions. See Harmelin, 501 U.S. at 1004-05.

### 2. California's Three Strikes Law

California's Three Strikes law, which appears in California Penal Code § 667(b)-(i), was enacted by the Legislature and became effective March 7, 1994. The heart of the Three Strikes law is subdivision (e) of section 667, which prescribes increased terms of imprisonment for defendants who have previously been convicted of certain "violent" or "serious" felonies. See Cal. Penal Code § 667(d).

Subdivision (e) may be summarized as follows: A second strike defendant (with one prior felony conviction) receives "twice the term otherwise provided as punishment for the current felony conviction." Cal. Penal Code § 667(e)(1). A third strike defendant (with two or more prior felony convictions) receives an indeterminate term of life imprisonment, which includes a minimum term. The minimum term for a third strike defendant is the greatest of (1) "[t]hree times the term otherwise provided as punishment for each current felony conviction," (2) 25 years, or (3) the term determined by the court, including enhancements, under Penal Code §§ 1170, et seq. Id. § 667(e)(2). These

12

provisions, for both second and third strike defendants, apply "in addition to any other enhancement or punishment provisions which may apply." Id. § 667(e).

The California Supreme Court trimmed the apparent reach of the Three Strikes law in one significant respect. In People v. Superior Court (Romero), 13 Cal. 4th 497, 504 (1996), the court held that the Three Strikes law did not take away the trial court's ability to strike prior felony conviction allegations in furtherance of justice under California Penal Code section 1385. A trial court may exercise the power to dismiss granted in section 1385 and, on its own motion or on that of the prosecutor, strike some or all of the prior conviction allegations. See id. at 507-08. When the court decides to dismiss on its own motion, it need not receive the approval of the prosecutor. See id.

### 3. Analysis

In this case, the Court of Appeal upheld the trial court's refusal to strike Petitioner's prior convictions, rejecting Petitioner's argument that his drug addiction should have been considered as a mitigating factor. (Appeal at 8.) In so deciding, the Court of Appeal stated that "drug addiction can be either a mitigating or an aggravating factor, depending on the facts." (Appeal at 7 (citing People v. Reyes, 195 Cal. App. 957 (1987)).) The Court of Appeal also relied on the trial court's "balancing [of Petitioner's] prospects for a crime free future, his demonstrated character, his expressed remorse, the nature and seriousness of the current offense, his lifelong criminal and prison record, the planning involved in the current crime, his current drug addiction and all of the factors available to the court." (Id. at 7-8.) The Court of Appeal cited Petitioner's "string of convictions from 1981 to the present" and dismissed Petitioner's attempt to "blame[] an untreated drug addiction" for "his life [spent] stealing property and robbing people." (Id. at 8.)

The Court finds that the Court of Appeal's adjudication of the claim resulted in a decision that was based on a reasonable determination of the several factors including Petitioner's criminal history. See 28 U.S.C. §2254(d)(2). The trial court has the discretion to determine when a strike is

1 in furtherance of justice.  See Romero, 13 Cal. 4th 497.  The Court of Appeal's decision
2 appropriately reflected the discretion afforded to the trial court.

3       The California Court of Appeal did not expressly address the merits of Petitioner's claim
4 that his sentence was cruel and unusual, therefore the Court will review the issue *de novo*.  See Pirtle
5 v. Morgan, 313 F.3d at 1167.  The trial record shows that the trial court considered Petitioner's
6 crack cocaine addiction, along with several other factors that could provide for leniency from the
7 court, but the trial court rejected them.  The record supports this determination.  Petitioner is a
8 lifelong recidivist, his criminal history includes one robbery, one burglary, two grand thefts, one
9 possession of a controlled substance, three probation revocations, five parole violations, three prison
10 sentences, and six prior felony convictions.  (Exhibits, Probation Report at 2-3, Ex. 3, Docket Item
11 No. 26.)  Here, Petitioner stole an 89-year old woman's purse and caused her great bodily harm.  As
12 a result of the crime, she had two surgeries and her lifestyle was severely limited.

13       Even though during trial Petitioner's counsel presented the Petitioner as non-violent and
14 under the influence of cocaine,[18] Petitioner's criminal history shows that Petitioner committed
15 crimes before his addiction to cocaine and after he quit for the first time.  Petitioner's first dealings
16 with cocaine began in 1987 and lasted until 1991, thus five out of the six prior felony convictions
17 occurred while Petitioner was not under the influence of drugs.  (Probation Report at 2-3, 6.)  At the
18 time of sentencing, Petitioner was forty-one years old and had no mitigating factors that would
19 indicate that Petitioner was no longer a threat to society.  (See Probation Report.)  The record of the
20 trial court supports the trial court's assessment of the gravity of the offenses and Petitioner's
21 criminal history.

22       In consideration of the above facts, the Court finds that Petitioner's sentence was not grossly
23 disproportionate, given the gravity of Petitioner's offense and his overall criminal history.  See
24 Ramirez, 365 F.3d 755.  The Court thus need not compare Petitioner's sentence with sentences in

---

[18] (See 3 RT 380-397.)

14

1 the same and other jurisdictions, and the Court need not reach prong two and three of the Solem test.
2 See Harmelin, 501 U.S. at 1004-05.

3 Accordingly, Petitioner is not entitled to habeas relief on his claim that the trial court abused
4 its discretion by not weighing the mitigating circumstances properly when the court refused to
5 dismiss one of his prior strikes and sentenced him to forty-one years to life in prison.

### C.     The Trial Court's Failure to Submit Certain Facts re: Prior Convictions to Jury

Petitioner contends that the trial court was in error when the court did not submit several factual issues surrounding Petitioner's prior convictions to the jury, violating his Sixth and Fourteenth Amendment rights. (Petition at 13-14.) Petitioner contends the trial court's preference for judicial economy interfered with the fact finding process. (Id. at 14.)

Since the California Court of Appeal did not expressly address Petitioner's claim that the factual issues concerning his prior conviction should have been submitted to the jury, the Court reviews the issue *de novo*. Pirtle, 313 F.3d at 1167. Petitioner contends the jury was improperly precluded from the fact-finding process, when the trial court determined that two of Petitioner's prior convictions qualified as strikes at sentencing. (Petition at 13-14.) Petitioner argues that these findings were questions of fact that the jury is entitled to decide. (Id.)

The Sixth Amendment does not require jury sentencing. Spaziano v. Florida, 468 U.S. 447, 464-65 (1984) (Sixth Amendment never construed to require jury sentencing). A jury therefore need not determine "sentencing factors" that simply limit the sentencing court's discretion in selecting a penalty within the range already available to it. McMillan v. Pennsylvania, 477 U.S. 79, 87-88 (1986). Such factors neither alter the maximum penalty for the crime committed nor create a separate offense calling for a separate penalty. Id. In contrast, any fact that "alters the maximum penalty of the crime committed" is an "element" which must be proved to a jury beyond a reasonable doubt. Id. at 87-88. The Sixth Amendment does not require a jury to determine facts which allow for a sentence that is less than the mandatory minimum. See United States v. Cardenas-Juarez, 469 F.3d 1331, 1334 (9th Cir. 2006). "Other than the fact of a prior conviction, any fact that

15

increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 488 (2000).

However, standing alone, judicial consideration of facts and circumstances beyond those found by a jury or admitted by the defendant does not violate the Sixth Amendment. United States v. Ameline, 409 F.3d 1073, 1077 (9th Cir. 2005) (*en banc*). "A constitutional infirmity arises only when extra-verdict findings are made in a mandatory guidelines system." Id. at 1078. Nor is there any requirement that such facts be found beyond a reasonable doubt; a preponderance of the evidence standard is appropriate. United States v. Clark, 452 F.3d 1082, 1085-86 (9th Cir. 2006).

Under California law, if it is necessary to review the record of a prior criminal proceeding in order to determine whether a prior conviction qualifies under California's various sentencing enhancement statutes, the responsibility for this inquiry falls upon the court, rather than the jury. People v. McGee, 38 Cal. 4th 682 (2006). In McGee, the California Supreme Court has held that the court's conducting this inquiry does not violate the federal constitutional right to a jury as set forth in Apprendi. Id. at 685, 714-15.

Here, the trial court ruled that:

> [Great bodily injury] and the time frames of the five-year washout are factual issues for the jury, but that identity is not, and the legal nature of the prior convictions under 19192.7, 667.5, and other statues suggest that the determination is a legal issue. The issue is one of the defendant's status, not of the facts of the case or the facts of the particular crime.

(3 RT 471.) In so deciding, the trial court reaffirmed established California precedent asserting that the question of whether a prior conviction is a serious felony for the purpose of determining whether a prior conviction is a strike, is a question for the court and not the jury. People v. Epps, 25 Cal. 4th 19, 23 (2001). Thus, the trial court's holding was neither contrary to, nor an unreasonable application of federal law.

Accordingly, Petitioner is not entitled to habeas relief on his claim that the nature of his prior felony convictions should have been determined by a jury.

**D.     Ineffective Assistance of Counsel**

Petitioner contends that he was denied effective assistance of counsel, because his counsel failed to adequately support a diminished capacity defense with evidence or an expert witness. (Traverse at 9.) Petitioner contends that expert testimony was the only means to call into question "how [his] serious and chronic drug abuse left him without capacity to commit a robbery." (Id.) The California Court of Appeal did not expressly address the merits of Petitioner's ineffective assistance of counsel. The Court thus reviews this issue *de novo*. Pirtle, 313 F.3d at 1167.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Id. The right to effective assistance counsel applies to the performance of both retained and appointed counsel without distinction. See Cuyler v. Sullivan, 446 U.S. 335, 344-45 (1980).

To prevail on a claim for ineffective assistance of counsel, a petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Strickland, 466 U.S. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. Under Strickland, "a court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." Id. at 670.

The Strickland framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established federal law, as determined by the Supreme Court of the United

17

States" for the purposes of 28 U.S.C. § 2254(d) analysis. See Williams (Terry) v. Taylor, 529 U.S. 362, 404-08 (2000).

Here, Petitioner contends that counsel's strategy to exclusively pursue a meritorious defense, instead of reasonably investigating or supporting a diminished capacity defense was deficient representation and caused him to be prejudiced. (Traverse at 9.) Petitioner contends that the counsel's decision not to call an expert impacted Petitioner's ability to present a full or partial defense to the jury that an element of robbery, specific intent, was missing on the day in question. (Id.)

The record shows that Petitioner's counsel presented a defense based on diminished capacity by voluntary intoxication. (See 2 CT at 185-86; 2 CT at 226-27.) At trial, Petitioner's counsel called an expert witness, forensic toxicologist Kenneth Dean Parker, who testified as follows:

> The person who's taking cocaine develops sensitivities to the things that they hear and their surroundings. (Exhibits 2B re Response to Habeas Petition, Reporter's Transcript on Appeal Vol. II at 308, hereafter, "2 RT," Docket Item No. 29.)

> With cocaine there's a combination of psychological dependence as well as physiological. The body wants more and tells the person they want more, but psychologically the person tells themselves that they like it and like the effect. (2 RT at 310.)

> Cocaine produces mental change or processing of information that results in the person's inability to perceive or to weigh and consider the consequences of their action when under the influence of cocaine. (2 RT at 312.)

> [A cocaine addict] appreciate[s] [that] they have a limited amount of money and a limited amount of cocaine and will worry about using up what they have and then not having anything for next week or next month. And so consequently they'll be motivated and have an irreversible urge to do things to get money and get more cocaine so they won't have this problem. (2 RT at 313.)

Additionally, Parker testified that the compulsion to get more cocaine can become overbearing and the effects can be enhances by binging. (2 RT at 313-16.) Parker's expert testimony supported Petitioner's contention that specific intent may not have been present. Furthermore, counsel consistently portrayed Petitioner as a man overtaken by addiction, supporting the voluntary

intoxication defense.[19] (See Exhibits 2A re Response to Habeas Petition, Reporter's Transcript on Appeal Vol. I at 70-72, hereafter, "3 RT," Docket Item No. 30. 1 RT 70-72; 2 RT 220-27; 3 RT 380-383.)

The trial record clearly demonstrates that the jury was presented with a substantial voluntary intoxication defense and rejected it. Thus, an additional expert's testimony as to the degree of intoxication and its effect on Petitioner's intent would not provide a "reasonable probability" that the jury would have accepted a voluntary intoxication defense. Therefore, the Court finds that Petitioner was not prejudiced. In light of this finding, the Court need not determine whether Petitioner's representation was deficient because Petitioner has not shown that he was prejudiced by his trial counsel's failure to investigate, prepare, and present evidence of his voluntary intoxication through an additional expert.

Accordingly, Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim.

### V. CONCLUSION

The Court DENIES the Petition for Writ of Habeas Corpus as to all claims. Judgment shall be entered accordingly.

Dated: January 5, 2010

JAMES WARE
United States District Judge

---

[19] During Petitioner's closing argument, Petitioner's counsel summarized his argument stating, "It's been clear from the very beginning, from the very moment that Mr. Wash was arrested that the issue of his mental capability, his being affected by crack cocaine, has been at issue." (3 RT 380.)

1  **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2  Charles Francis-Antonio Carbone charles@charlescarbone.com
Jamie Michele Weyand jamie.weyand@doj.ca.gov
3  Michele Joette Swanson michele.swanson@doj.ca.gov
Peggy S. Ruffra peggy.ruffra@doj.ca.gov

5  **Dated:  January 5, 2010**                                   **Richard W. Wieking, Clerk**

                                                                  **By:     /s/ JW Chambers
                                                                        Elizabeth Garcia
                                                                        Courtroom Deputy**